JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| KATHLEEN KOHRI | WALL TOWNSHIP |

| (b) County of Residence of First Listed Plaintiff   Burlington | County of Residence of First Listed Defendant   Monmouth |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)*<br>Katherine C. Oeltjen , Esquire<br>Console Mattiacci Law LLC, 110 Marter Avenue, Suite<br>502 Moorestown, NJ 08057 856-854-4000 | Attorneys *(If Known)* |
|---|---|

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government<br>    Plaintiff | ☒ 3 Federal Question<br>    *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government<br>    Defendant | ☐ 4 Diversity<br>    *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place<br>of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place<br>of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a<br>Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment<br>   & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted<br>   Student Loans<br>   (Excludes Veterans)<br>☐ 153 Recovery of Overpayment<br>   of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product<br>   Liability<br>☐ 320 Assault, Libel &<br>   Slander<br>☐ 330 Federal Employers'<br>   Liability<br>☐ 340 Marine<br>☐ 345 Marine Product<br>   Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle<br>   Product Liability<br>☐ 360 Other Personal<br>   Injury<br>☐ 362 Personal Injury -<br>   Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury -<br>   Product Liability<br>☐ 367 Health Care/<br>   Pharmaceutical<br>   Personal Injury<br>   Product Liability<br>☐ 368 Asbestos Personal<br>   Injury Product<br>   Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal<br>   Property Damage<br>☐ 385 Property Damage<br>   Product Liability | ☐ 625 Drug Related Seizure<br>   of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal<br>   28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated<br>   New Drug Application<br>☐ 840 Trademark<br>☐ 880 Defend Trade Secrets<br>   Act of 2016 | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC<br>   3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and<br>   Corrupt Organizations<br>☐ 480 Consumer Credit<br>   (15 USC 1681 or 1692)<br>☐ 485 Telephone Consumer<br>   Protection Act<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/<br>   Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR**<br>☐ 710 Fair Labor Standards<br>   Act<br>☐ 720 Labor/Management<br>   Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical<br>   Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement<br>   Income Security Act | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information<br>   Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure<br>   Act/Review or Appeal of<br>   Agency Decision<br>☐ 950 Constitutionality of<br>   State Statutes |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☒ 442 Employment<br>☐ 443 Housing/<br>   Accommodations<br>☐ 445 Amer. w/Disabilities -<br>   Employment<br>☐ 446 Amer. w/Disabilities -<br>   Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate<br>   Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee -<br>   Conditions of<br>   Confinement | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration<br>   Actions | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff<br>   or Defendant)<br>☐ 871 IRS—Third Party<br>   26 USC 7609 | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original<br>   Proceeding | ☐ 2 Removed from<br>   State Court | ☐ 3 Remanded from<br>   Appellate Court | ☐ 4 Reinstated or<br>   Reopened | ☐ 5 Transferred from<br>   Another District<br>   *(specify)* | ☐ 6 Multidistrict<br>   Litigation -<br>   Transfer    ☐ 8 Multidistrict<br>   Litigation -<br>   Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §2000e, et seq ("Title VII"); New Jersey Law Against Discrimination, as amended, N.J.S.A. 10:5-1, et seq. ("NJLAD").

Brief description of cause:
Plaintiff brings this action against her former employer for sex discrimination

## VII. REQUESTED IN COMPLAINT:

| ☐ CHECK IF THIS IS A **CLASS ACTION**<br>UNDER RULE 23, F.R.Cv.P. | DEMAND $<br>excess of $75,000 | CHECK YES only if demanded in complaint:<br>JURY DEMAND: ☒ Yes   ☐ No |
|---|---|---|

## VIII. RELATED CASE(S) IF ANY

*(See instructions:)*    JUDGE _____    DOCKET NUMBER _____

| DATE<br>October 7, 2022 | SIGNATURE OF ATTORNEY OF RECORD<br>*Kather C. Oeltjen* |
|---|---|

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **KATHLEEN KOHRI** | : | **CIVIL ACTION NO.** |
| **Mount Laurel, NJ 08054** | : | |
| | : | |
| **Plaintiff,** | : | |
| **v.** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **WALL TOWNSHIP** | : | |
| **2700 Allaire Road** | : | |
| **Wall Township, NJ 07719** | : | |
| | : | |
| **Defendant.** | : | |

## COMPLAINT

### I.   INTRODUCTION

Plaintiff, Kathleen Kohri ("Plaintiff") brings claims pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq. ("Title VII") and the New Jersey Law Against Discrimination, as amended, N.J.S.A. 10:5-1, et seq. ("NJLAD"). Plaintiff seeks damages, including economic loss, compensatory and punitive damages, costs and attorney's fees and all other relief that this Court deems appropriate.

### II.   PARTIES

1.    Plaintiff, Kathleen Kohri is an individual and a citizen of the State of New Jersey. She resides in Mount Laurel, NJ 08054.

2.    Plaintiff is female.

3.    Defendant Wall Township is located at 2700 Allaire Road, Wall Township, NJ 07719.

4.      Defendant operates under the township form of New Jersey municipal government and is governed by a five-member Township Committee.

5.      Defendant is engaged in an industry affecting interstate commerce and regularly does business in the state of New Jersey.

6.      At all times material hereto, Defendant maintained a business location at 2700 Allaire Road, Wall Township, NJ 07719.

7.      Plaintiff worked out of Defendant's offices located at 2700 Allaire Road, Wall Township, NJ 07719.

8.      At all times material hereto, Defendant acted by and through authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

9.      At all times material hereto, Defendant was an employer within the meaning of the statutes which forms the basis of this matter.

10.     At all times material hereto, Plaintiff was an employee of Defendant within the meaning of the statutes which forms the basis of this matter.

III.    **JURISDICTION AND VENUE**

11.     The causes of action which form the basis of this matter arise under Title VII and the NJLAD.

12.     The District Court has jurisdiction over Count I (Title VII) pursuant to 28 U.S.C. §1331.

13.     The District Court has supplemental jurisdiction over Count II (NJLAD) pursuant to 28 U.S.C. § 1367.

14.     On or about December 17, 2021, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), complaining of the acts of discrimination alleged herein.  Attached hereto and incorporated herein and marked as Exhibit "1" is a true and correct copy of the EEOC Charge of Discrimination (with personal identifying information redacted).

15.     On or about July 12, 2022, the EEOC issued to Plaintiff a Dismissal and Notice of Rights for Plaintiff's EEOC Charge.  Attached hereto and marked as Exhibit "2" is a true and correct copy of that notice (with personal identifying information redacted).

16.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV.   <u>FACTUAL ALLEGATIONS</u>

17.     Plaintiff was hired by Defendant in or about February, 2004 as an Assistant Township Administrator ("ATA").

18.     As ATA, Plaintiff was responsible for the following, without limitation: acting as the Township Administrator in his absence; managing all aspects of grant writing and compliance; recommending and implementing personnel policies and procedures; making recommendations on hiring, grievances and disciplinary actions; acting as main contact related to all issues with Green Acres and Farmland Preservation; participating in collective bargaining negotiations; managing the employee relations conflict and resolution process; handling all production aspects of the annual Township Recycling Guide and Winter Snow Removal Brochure; communicating Township goals effectively across ten (10) different departments and approximately two-hundred

(200) employees; managing certain aspects of the Township's Affordable Housing plan; and fostering and building positive relationships with Township residents and organizations.

19.     For the first eight (8) years of Plaintiff's employment, she reported to the then Township Administrator, Joseph Verruni ("Verruni").

20.     Verunni routinely praised Plaintiff's performance.

21.     Upon Verruni's retirement, in or about 2012, Defendant hired Jeff Bertrand ("Bertrand") as Township Administrator.

22.     Plaintiff reported to Bertrand for the rest of her employment.

23.     At all times material hereto, Plaintiff performed her job duties well.

24.     Examples of her strong performance, include, but are not limited to the following: receiving the Young Professional Award from the New Jersey Municipal Management Association;  organizing and implementing the effort to bring single stream recycling and automated sanitation vehicles to the Township; receiving over $2.5 million dollars in grant money for open space preservation and ADA compliance throughout Wall Township; and, managing significant renovation projects within several Township buildings.

25.     Defendant's demographics demonstrate a bias against women in leadership positions.

26.     By way of example, only:

> i.   Defendant is run by an elected Township Committee (the "Committee") that was more often than not, entirely male during the course of Plaintiff's employment;

    ii.   Over approximately more than fifteen (15) years of employment only three women ever served on the Committee;

    iii.   The Committee never had more than one woman on the Committee at any given time and often did not have any women;

    iv.   The Township Administrator is male;

    v.   The Township Attorney is male; and,

    vi.   For the majority of Plaintiff's employment, she was the highest ranking, female administrative employee in the Township.

27. From the time of his hire to Plaintiff's last day of employment, Bertrand routinely made sex-based inappropriate comments in her presence/to her directly, often of a sexual nature. These comments included, but were not limited to the following:

    i.   "I always like to say – If you are in jail and Bubba's going to rape you, don't you at least want to pick the position?"

    ii.   "Listen, I want to work with you but I'm not going to lay here with my legs open waiting for you to enter";

    iii.   Referred to a Township Resident as "Doctor Gold Finger"; the individual is an OB/GYN;

    iv.   "They are sucking off the public teet" in reference to Township employees;

    v.   "He said the woman's boobs were so big she never needed to buy milk" when sharing an inappropriate story he was told by a friend;

vi. "It's like I'm running a massage parlor today – I'm just jerking everyone off"; and,

vii. "Oh, you're the new guy at your job and you have to attend a retreat - you know what that means? It means you have to be the pivot man in the circle jerk." He then went on to begin to detail the explicit sexual details of what a "circle jerk" is.

28. In or about the end of 2017, Plaintiff complained to the Township Attorney's office of Bertrand's sex discriminatory/harassing behavior and comments.

29. Approximately one week later, in or about late 2017/early 2018, Sean Kean ("Kean") Township Attorney contacted Plaintiff about her complaint and asked for details.

30. Plaintiff provided details to Kean.

31. On or about February 28, 2018, in the context of discussing their mandatory obligations to report sexually harassing or discriminatory behavior, Bertrand told Plaintiff, "It's like if Pamela Anderson worked here, hot Pamela Anderson like from her Baywatch years, and I walked into her office and she grabbed my crotch - I would like it. But, if I told you or my direct supervisor about it - you would have to do something about it, even though I really liked the fact that she grabbed my crotch."

32. On or about March 1, 2018, Plaintiff reported the "Pamela Anderson story" to Kean.

33. On or about March 15, 2018, the then Township Recreation Director, who is a lesbian, complained to Plaintiff that Bertrand spent "two hours" sharing inappropriate stories and

6

information about a family member who is gay.  She asked Plaintiff, "how does he keep getting away with this stuff?"

34.     Plaintiff reported the Recreation Director's concerns to Kean.

35.     On or about July 5, 2018, during an "internal investigation" into a complaint of religious discrimination by another employee, Plaintiff told two attorneys from Kean's office that while Plaintiff has never witnessed any religious discrimination, Plaintiff has witnessed Bertrand engage in sex discrimination and harassment on multiple occasions.

36.     Bertrand continued to behave in an inappropriate and sex discriminatory and harassing manner.

37.     Defendant did not take any steps to remediate Bertrand's behavior despite Plaintiff's multiple complaints to the Township Attorney and other members of his staff.

38.     On or about April 18, 2019, Plaintiff complained to Danielle Pantellio, an attorney from Kean's law firm of Bertrand's sexually inappropriate comments (again).

39.     Plaintiff again gave the specific examples of Bertrand's comments, including the "Bubba" example detailed above.

40.     Defendant did not take any meaningful steps to remediate Bertrand's conduct.

41.     On or about July 23, 2019, Bertrand told Plaintiff and others an inappropriate story about an employee at a tile store that he found sexually attractive.

42.     For nearly forty (40) minutes Bertrand provided explicit details about the tile store employee's physical appearance and his reaction to her physical appearance.

43.     Township Committeeman Carl Braun, who was present, responded "Wow, I think I need to stop for some tile on my way home."

44.     Later two employees separately complained to Plaintiff about Bertrand telling the "tile girl story."

45.     On or about July 24, 2019, Bertrand refused to attend required anti-discrimination training conducted by an attorney from Kean's office.

46.     Bertrand stated, "what I'm working on is much more important than that class."

47.     At the class's conclusion, Plaintiff complained to the attorney that Bertrand refused to attend and that given that he continued to make sex-based inappropriate comments at work he needed to be required to attend make-up training.

48.     On or about August 8, 2019, Kean told Plaintiff he "needed" to conduct an "investigation" into her complaints of sex discrimination and harassment conduct by Bertrand.

49.     On or about August 13, 2019, Plaintiff provided details to Kean of Bertrand's behavior and encouraged Kean to require Bertrand to get training.

50.     Kean became angry with Plaintiff when she tried to focus on fixing Bertrand's behavior and told her that he had already told Bertrand all about her complaints and that Bertrand was "very" upset.

51.     From the time that Bertrand learned that Plaintiff had complained about his conduct, he treated her differently than before he knew she had complained.

52.     For example and without limitation:

    i.   He excluded Plaintiff from meetings and events that she would typically attend;

    ii.   He routinely went around Plaintiff to work directly with her subordinates on matters that otherwise should have been directed to her;

    iii.  He siloed Plaintiff within the Township, making it clear to all senior leaders in the township that she was not to be included in important decisions;

    iv.  He ignored Plaintiff, often going for extended periods of time without speaking to her; and,

    v.  Often Bertrand refused to even make eye contact with Plaintiff.

53.    Bertrand made it clear to Plaintiff that her employment had changed because he was angry that she had complained about his discriminatory conduct.

54.    Plaintiff was subject to a hostile work environment.

55.    Before Plaintiff complained, Bertrand routinely worked closely with her to achieve results for the residents of Wall Township.

56.    In or about October, 2019, Plaintiff brought to Bertrand's attention (first verbally and then by memorandum) that she was not being paid at the level he had promised her.

57.    Plaintiff initially assumed her diminished pay was simply a clerical error.

58.    Plaintiff's memorandum about her incorrect pay was ignored for months.

59.    On or about November 8, 2019, Plaintiff complained to Township Mayor Kevin Orender ("Orender")(male) of Bertrand's sex discriminatory/harassing conduct and detailed for Orender how she had been retaliated against since Bertrand learned of her complaints.

60.    Orender responded in part that he felt badly for Bertrand and that Bertrand had complained to Orender that he felt like he was "walking on eggshells" every day at work because of Plaintiff and Plaintiff's complaints.

61.    Following Plaintiff' complaint to Orender, Defendant continued to subject her to a hostile work environment and Bertrand's efforts to isolate and marginalize Plaintiff intensified.

62.     On or about November 26, 2019, Plaintiff complained about Bertrand's isolation and marginalization of Plaintiff to Deputy Mayor George Newbury ("Newbury")(male) and detailed her prior complaints of sex discrimination/harassment.

63.     Newbury told Plaintiff that he didn't "blame" Bertrand for ignoring her as Kean had instructed him to do so.

64.     On or about November 27, 2019, Kean reported that his "investigation" was completed and that while he had concluded that Bertrand had engaged in inappropriate behavior, "nothing illegal occurred."

65.     Kean also stated that Bertrand would be required to take anti-discrimination training.

66.     Plaintiff again detailed for Kean all of the retaliation Plaintiff had been subjected to since Bertrand learned of her complaints about his discriminatory and harassing conduct.

67.     In response, and for the first time, Defendant falsely stated that there was a "problem with Plaintiff's time" and that perhaps she wasn't working the hours she was supposed to work.

68.     Plaintiff detailed her hours for Defendant.

69.     Kean agreed that her working hours were appropriate.

70.     On or about December 11, 2019, Plaintiff was ordered to a meeting with the Orender, Bertrand, Kean and Timothy Farrell ("Farrell")(male), Committeeman.

71.     Plaintiff thought that the meeting was intended to be about her memorandum about the errors in her pay.

72.     Instead, during the meeting Plaintiff was yelled at in an aggressive manner by the all-male group and falsely accused of poor work ethic and not working enough hours.

73.     Plaintiff was told that she was not going to be paid at the level earlier promised by Bertrand.

74.     At least two of the men in the room were red-faced and angry, continually raising their voices and using aggressive body language.

75.     At one point in the meeting, amid suggestions that Plaintiff did "nothing" for the Township or that her office was just a "party room," Plaintiff stood up and said that she was feeling very uncomfortable and that she felt like she needed "legal representation" and that she wanted to leave.

76.     Orender responded only by telling Plaintiff to sit back down. Plaintiff responded that she felt more comfortable standing.

77.     Plaintiff was visibly shaking during the meeting.

78.     Plaintiff was deeply upset and felt threatened and intimidated.

79.     Plaintiff told them that they could forget her memorandum about being paid unfairly because nothing was worth being treated the way that she was being treated in that room by the men.

80.     During the meeting and after Plaintiff was deeply upset and intimidated.

81.     She cried in her car alone for a significant period afterwards.

82.      Following the meeting, Plaintiff recorded her hours.

83.     She was the only employee at her level asked to record her hours.

84.     When Plaintiff sent recordings of her hours to Bertrand, he never responded.

11

85.     Following the meeting and the events described above, the hostile work environment continued.

86.     Plaintiff felt upset and humiliated at work.

87.     Plaintiff was increasingly "iced out" by Bertrand, the Mayor and Committee members.

88.     Defendant continued to ignore Plaintiff's accomplishments and efforts.

89.     Defendant continued to isolate Plaintiff within the Township.

90.     Defendant continued to refuse to engage in polite conversation with Plaintiff.

91.     Bertrand continued to "go around" Plaintiff and work with her subordinates only.

92.     Bertrand refused to provide Plaintiff with information that she needed to have access to as part of her job requirements.

93.     Defendant never corrected Plaintiff's pay to the level promised by Bertrand.

94.     Other employees of Defendant noticed the treatment Plaintiff had been subjected to and commented about it to her, with at least one employee expressing fear that she would be treated as Plaintiff had been treated.

95.     Plaintiff understood from Defendant's actions that she would never be a valued or welcomed employee of the Township again.

96.     Other employees told Plaintiff or otherwise indicated to Plaintiff that she would never be a valued or welcomed employee of Defendant again.

97.     Bertrand continued to make sex-based and sex-discriminatory comments in front of Plaintiff and other Township employees with impunity, including without limitation the following:

      i.   On or about November 23, 2020 in response to the needs of a breastfeeding employee: "Should I rollout a red carpet in the designated space?  Maybe we should pull up a reclining chair and bring in a fireplace"; and,

     ii.   On or about March 9, 2021 after a budget meeting and in response to a query as to how the budget meeting went: "Well, Tom Kingman announced that his wife gave up sex for Lent, then Tom O'Hara immediately said - No she didn't!  How funny is that?!  It was hilarious!"

98.     On or about June 24, 2021, amid the on-going, hostile work environment, Plaintiff was compelled to leave Defendant, effective July 9, 2021.

99.     The hostile work environment to which she was subjected was severe and/or pervasive.

100.     Defendant did not take any steps to remediate the hostile work environment, and instead, empowered Bertrand to continue behaving in a sex discriminatory and harassing manner.

101.     Plaintiff told Bertrand that she was compelled to terminate her employment because of the discriminatory and retaliatory conduct she had been subjected to and Defendant's abject failure to remediate same.

102.     Bertrand acknowledged to Plaintiff some of Defendant's retaliatory conduct, including the inappropriate actions by Defendant during the December 11, 2019 meeting.

103.     Plaintiff understood Bertrand to be conceding to Defendant's wrongful conduct.

104.     Defendant did not provide any reason for its discriminatory treatment of Plaintiff.

105.     Plaintiff's sex was a motivating and/or determinative factor in Defendant's discriminatory treatment of Plaintiff, including without limitation in connection with subjecting

13

her to a hostile work environment, failing to pay her appropriately and as promised, and her termination.

106.    Plaintiff's complaints of sex discrimination, harassment, and retaliation for engaging in protected activity were a motivating and/or determinative factor(s) in Defendant's retaliatory treatment of Plaintiff including without limitation in connection with subjecting her to a hostile work environment, failing to pay her appropriately and as promised, and her termination.

107.    Plaintiff was subjected to severe and/or pervasive conduct that interfered with her ability to perform her job duties and was not welcomed by Plaintiff, thereby creating a hostile work environment.

108.    The conduct to which Plaintiff was subjected was so severe and/or pervasive that a reasonable person in Plaintiff's position would find the work environment to be hostile and/or abusive.

109.    As a direct and proximate result of Defendant's discriminatory conduct and retaliatory conduct, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

110.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

**COUNT I—TITLE VII**

111.     Plaintiff incorporates herein by reference paragraphs above, as if set forth herein in their entirety.

112.     By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated Title VII.

113.     Defendant acted intentionally, and with malice and/or reckless indifference to Plaintiff's rights, and its conduct warrants the imposition of punitive damages.

114.     As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered the losses set forth herein and has incurred attorneys' fees and costs.

115.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's retaliatory acts unless and until this Court grants the relief requested herein.

116.     No previous application has been made for the relief requested herein.

## COUNT II– NJLAD

117.     Plaintiff incorporates herein by reference paragraphs above, as if set forth herein in their entirety.

118.     Defendant, by the above-described discriminatory and retaliatory acts, has violated the NJLAD.

119.     Members of Defendant's upper management had actual participation in, or willful indifference to, Defendant's wrongful and especially egregious conduct described herein, and their conduct warrants the imposition of punitive damages against Defendant.

120.    As a direct and proximate result of Defendant's discriminatory and retaliatory conduct, Plaintiff has sustained the injuries, damages, and losses set forth herein, and has incurred attorney's fees and costs.

121.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory, retaliatory, and unlawful acts unless and until this Court grants the relief requested herein.

122.    No previous application has been made for the relief requested herein.

## **RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant:

(a)    declaring the acts and practices complained of herein to be a violation of Title VII;

(b)    declaring the acts and practices complained of herein to be in violation of the NJLAD;

(c) entering judgment against Defendant and in favor of Plaintiff in an amount to be determined;

(d)    enjoining and restraining permanently the violations alleged herein;

(e)    awarding compensatory damages to Plaintiff to make Plaintiff whole for all past and future lost earnings, benefits, and earning capacity, which Plaintiff has suffered and will continue to suffer as a result of Defendant's discriminatory, retaliatory and unlawful misconduct;

(f)    awarding compensatory damages to Plaintiff for past and future emotional upset, mental anguish, humiliation, loss of life's pleasures, and pain and suffering;

(g)    awarding Plaintiff costs of this action, together with reasonable attorney's fees;

(h)     awarding punitive damages to Plaintiff;

(i)     awarding Plaintiff such other damages as are appropriate under the Title VII and the

NJLAD; and

(j)     granting such other and further relief as this Court deems appropriate.

**CONSOLE MATTIACCI LAW, LLC**

Dated: October 7, 2022                    **BY**: _/s/ Katherine C. Oeltjen_
Katherine C. Oeltjen, Esquire (57372013)
110 Marter Avenue, Suite 502
Moorestown, NJ 08057
Telephone: (856) 854-4000
Facsimile: (215) 565-2852
*Attorney for Plaintiff Kathleen Kohri*

17

# EXHIBIT 1

| CHARGE OF DISCRIMINATION | | AGENCY | CHARGE NUMBER |
|---|---|---|---|
| This form is affected by the Privacy Act of 1974; See privacy statement before consolidating this form. | | Q FEPA<br>X EEOC | |

| STATE OR LOCAL AGENCY: | | |
|---|---|---|

| NAME (Indicate Mr., **Ms.**, Mrs.)<br>**Kathleen Kohri** | HOME TELEPHONE NUMBER *(Include Area Code)* |
|---|---|
| | REDACTED |

| STREET ADDRESS<br>REDACTED | CITY, STATE AND ZIP<br>Mt. Laurel, NJ 08054 | DATE OF BIRTH<br>REDACTED |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OF LOCAL GOVERNMENT WHO DISCRIMINATED AGAINST ME (If more than one than list below)

| NAME<br>**Wall Township** | NUMBER OF EMPLOYEES, MEMBERS<br>More than 200 | TELEPHONE (Include Area Code)<br>732-449-8444 |
|---|---|---|
| STREET ADDRESS<br>2700 Allaire Road | CITY, STATE AND ZIP<br>Wall Township, NJ 07719 | COUNTY<br>Monmouth |

| CAUSE OF DISCRIMINATION *(Check appropriate box(es))*<br>Q Race  Q Color  **X** Sex  Q Religion  Q National Origin<br>**X** Retaliation  Q Age  Q Disability  Q Other *(Specify)* | DATE DISCRIMINATION TOOK PLACE<br>Continuous with the<br>Latest Date: July 9, 2021 |
|---|---|

**The Particulars Are:**

A.   1.   Relevant Work History

I was hired by Wall Township ("Respondent" or "Township") as the Assistant Township Administrator ("ATA") in or about February, 2004. As ATA, I was responsible for the following, without limitation: acting as the Township Administrator in his absence; managing all aspects of grant writing and compliance; recommending and implementing personnel policies and procedures; making recommendations on hiring, grievances and disciplinary actions; acting as main contact related to all issues with Green Acres and Farmland Preservation; participating in collective bargaining negotiations; managing the employee relations conflict and resolution process; handling all production aspects of the annual Township Recycling Guide and Winter Snow Removal Brochure; communicating Township goals effectively across ten (10) different departments and approximately two-hundred (200) employees; managing certain aspects of the Township's Affordable Housing plan; and fostering and building positive relationships with Township residents and organizations. For the first eight (8) years of my employment, I reported to the then Township Administrator, Joseph Verruni ("Verruni"). Verunni routinely praised my performance. Upon Verruni's retirement, in or about 2012, Respondent hired Jeff Bertrand ("Bertrand") as Township Administrator. I reported to Bertrand for the rest of my employment.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures | NOTARY - (when necessary for State and Local Requirements) |
|---|---|
| | I swear of affirm that I have read the above charge and that it is true to the best of my knowledge information and belief. |
| I declare under penalty or perjury that the foregoing is true and correct. | |

| Date:<br>12/16/21 | Charging Party *(Signature)*:<br>*Kathleen E. Kohri* | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day Month, and year) |
|---|---|---|

At all times material hereto, I performed my job duties well. Examples of my strong performance, include, but are not limited to the following: receiving the Young Professional Award from the New Jersey Municipal Management Association; organizing and implementing the effort to bring single stream recycling and automated sanitation vehicles to the Township; receiving over $2.5 million dollars in grant money for open space preservation and ADA compliance throughout Wall Township; and, managing significant renovation projects within several Township buildings.

2.  Harm Summary

I believe that I have been subject to sex based discriminatory (I am female) and retaliatory behavior for complaining of sex discrimination/harassment by Respondent resulting in connection with a continuous hostile work environment, failure to pay me as promised, and my termination from employment. Evidence of the discriminatory and retaliatory treatment that I have been subjected to includes, but is not limited to the following:

a.  Respondent's demographics demonstrate a bias against women in leadership positions. By way of example, only, Respondent is run by an elected Township Committee (the "Committee") that was more often than not, entirely male. During the course of my employment more than fifteen (15) years of employment only three women ever served on the Committee. The Committee never had more than one woman on the Committee at any given time and often did not have any women. The Township Administrator is male. The Township Attorney is male. For the majority of my employment, I was the highest ranking, female administrative employee in the Township.

b.  From the time of his hire to my last day of employment, Bertrand routinely made sex-based inappropriate comments in my presence/to me directly, often of a sexual nature. These comments included, but were not limited to the following:

    i.   "I always like to say – If you are in jail and Bubba's going to rape you, don't you at least want to pick the position?"

    ii.  "Listen, I want to work with you but I'm not going to lay here with my legs open waiting for you to enter."

    iii. Referred to a Township Resident as "Doctor Gold Finger"; the individual is an OB/GYN.

    iv.  "They are sucking off the public teet" in reference to Township employees.

    v.   "He said the woman's boobs were so big she never needed to buy milk" when sharing an inappropriate story he was told by a friend.

    vi.  "It's like I'm running a massage parlor today – I'm just jerking everyone off."

2

EEOC Charge of Discrimination
Initials of Charging Party – KK

vii.   "Oh, you're the new guy at your job and you have to attend a retreat - you know what that means? It means you have to be the pivot man in the circle jerk." He then went on to begin to detail the explicit sexual details of what a "circle jerk" is.

c. In or about the end of 2017, I complained to the Township Attorney's office of Bertrand's sex discriminatory/harassing behavior and comments.

d. Approximately one week later, in or about late 2017/early 2018, Sean Kean ("Kean") then Township Attorney contacted me about my complaint and asked for details.

e. I provided details to Kean.

f. On or about February 28, 2018, in the context of discussing our mandatory obligations to report sexually harassing or discriminatory behavior, Bertrand told me, "It's like if Pamela Anderson worked here, hot Pamela Anderson like from her Baywatch years, and I walked into her office and she grabbed my crotch - I would like it. But, if I told you or my direct supervisor about it - you would have to do something about it, even though I really liked the fact that she grabbed my crotch."

g. On or about March 1, 2018, I reported the "Pamela Anderson story" to Kean.

h. On or about March 15, 2018, the then Township Recreation Director, who is a lesbian, complained to me that Bertrand spent "two hours" sharing inappropriate stories and information about a family member who is gay. She asked me, "how does he keep getting away with this stuff?"

i. I reported the Recreation Director's concerns to Kean.

j. On or about July 5, 2018, during an "internal investigation" into a complaint of religious discrimination by another employee, I told two attorneys from Kean's office that while I have never witnessed any religious discrimination, I have witnessed Bertrand engage in sex discrimination and harassment on multiple occasions.

k. Bertrand continued to behave in an inappropriate and sex discriminatory and harassing manner.

l. Respondent did not take any steps to remediate his behavior despite my multiple complaints to the Township Attorney and other members of his staff.

m. On or about April 18, 2019, I complained to Danielle Pantellio, an attorney from the Township Attorneys' law firm of Bertrand's sexually inappropriate comments (again). I again gave the specific examples of his comments, including the "Bubba" example detailed above.

n. Respondent did not take any meaningful steps to remediate Bertrand's conduct.

EEOC Charge of Discrimination
Initials of Charging Party – $KK$

o. On or about July 23, 2019, Bertrand told me and others an inappropriate story about an employee at a tile store that he found sexually attractive. For nearly forty (40) minutes he provided explicit details about her physical appearance and his reaction to her physical appearance.

p. Township Committeeman Carl Braun, who was present, responded "Wow, I think I need to stop for some tile on my way home."

q. Later two employees separately complained to me about Bertrand telling the "tile girl story."

r. On or about July 24, 2019 Bertrand refused to attend required anti-discrimination training conducted by an attorney from Kean's office. Bertrand stated, "what I'm working on is much more important than that class."

s. At the class conclusion, I complained to the attorney that Bertrand refused to attend and that given that he continued to make sex-based inappropriate comments at work he needed to be required to attend make-up training.

t. On or about August 8, 2019 Kean told me he "needed" to conduct an "investigation" into my complaints of sex discrimination and harassment conduct by Bertrand.

u. On or about August 13, 2019, I provided details to Kean of Bertrand's behavior and encouraged Kean to require Bertrand to get training.

v. Kean became angry with me when I tried to focus on fixing Bertrand's behavior and told me that he had already told Bertrand all about my complaints and that Bertrand was "very" upset with me.

w. From the time that Bertrand learned that I had complained about his conduct, he treated me differently than before he knew I had complained.

x. For example and without limitation:

   i. He excluded me from meetings and events that I would typically attend;

   ii. He routinely went around me to work directly with my subordinates on matters that otherwise should have been directed to me;

   iii. He siloed me within the Township, making it clear to all senior leaders in the township that I was not to be included in important decisions;

   iv. He ignored me, often going for extended periods of time without speaking to me; and,

   v. Often Bertrand refused to even make eye contact with me.

4

EEOC Charge of Discrimination
Initials of Charging Party – KK

y. Bertrand made it clear to me that my employment had changed because he was angry that I had complained about his discriminatory conduct.

z. Before I complained, Bertrand routinely worked closely with me to achieve results for the residents of Wall Township.

aa. In or about October, 2019, I brought to Bertrand's attention (first verbally and then by memorandum) that I was not being paid at the level he had promised me. I initially assumed my diminished pay was simply a clerical error.

bb. My memorandum about my pay was ignored for months.

cc. On or about November 8, 2019, I complained to Township Mayor Kevin Orender ("Orender") of Bertrand's sex discriminatory/harassing conduct and detailed for Orender how I had been retaliated against since Bertrand learned of my complaints.

dd. Orender responded in part that he felt badly for Bertrand and that Bertrand had complained to Orender that he felt like he was "walking on eggshells" every day at work because of me and my complaints.

ee. Following my complaint to Orender, Respondent continued to subject me to a hostile work environment and Bertrand's efforts to isolate and marginalize me intensified.

ff. On or about November 26, 2019, I complained about Bertrand's isolation and marginalization of me to Deputy Mayor George Newbury ("Newbury") and detailed my prior complaints of sex discrimination/harassment.

gg. Newbury told me that he didn't "blame" Bertrand for ignoring me as Kean had instructed him to do so.

hh. On or about November 27, 2019 Kean reported that his "investigation" was completed and that while he had concluded that Bertrand had engaged in inappropriate behavior, "nothing illegal occurred."

ii. Kean also stated that Bertrand would be required to take antidiscrimination training.

jj. I again detailed for Keen all of the retaliation I had been subjected to since Bertrand learned of my complaint.

kk. In response, and for the first time, Respondent falsely stated that there was a "problem with my time" and that perhaps I wasn't working the hours I was supposed to work.

ll. I detailed my hours for Respondent and Kean agreed that my working hours were appropriate.

mm. On or about December 11, 2019, I was ordered to a meeting with the Orender, Bertrand,

**EEOC Charge of Discrimination**
**Initials of Charging Party –** $KK$

Kean and Timothy Farrell ("Farrell"), Committeeman.

nn. I thought that the meeting was intended to be about my memorandum about the errors in my pay.

oo. Instead, during the meeting I was yelled at in an aggressive manner by the all-male group and falsely accused of poor work ethic and not working enough hours. I was told that I was not going to be paid at the level earlier promised by Bertrand.

pp. At least two of the men in the room were red-faced and angry, continually raising their voices and using aggressive body language.

qq. At one point in the meeting, amid suggestions that I did "nothing" for the Township or that my office was just a "party room," I stood up and said that I was feeling very uncomfortable and that I felt like I needed "legal representation" and that I wanted to leave.

rr. Orender responded only by telling me to sit back down. I responded that I felt more comfortable standing. I was visibly shaking.

ss. I told them that they could forget my memorandum about being paid unfairly, nothing was worth being treated the way that I was being treated in that room as I was nervous and intimidated.

tt. During the meeting and after I was deeply upset and intimidated. I cried in my car alone for a significant period of time afterwards.

uu. Following the meeting, I recorded my hours. I was the only employee at my level asked to record my hours.

vv. When I sent recordings of my hours to Bertrand, he never responded.

ww. Following the meeting and the events described above, the hostile work environment continued.

xx. I was increasingly "iced out" by Bertrand, the Mayor and Committee members.

yy. Respondent continued to ignore my accomplishments and efforts.

zz. Respondent continued to isolate me within the Township.

aaa. Respondent continued to refuse to engage in polite conversation with me.

bbb. Bertrand continued to "go around" me and work with my subordinates only.

ccc. Bertrand refused to provide me with information that I needed to have access to as part of my job requirements.

ddd. Respondent never corrected my pay to the level promised by Bertrand.

eee. Other employees of Respondent noticed the treatment I had been subjected to and commented about it to me, with at least one employee expressing fear that she would be treated as I had been treated.

fff. I understood from Respondent's actions that I would never be a valued or welcomed employee of the Township and so did other employees based on their comments to me.

ggg. Bertrand continued to make sex-based and sex-discriminatory comments in front of me and other Township employees with impunity, including without limitation the following:

   i.  On or about November 23, 2020 in response to the needs of a breastfeeding employee: "Should I rollout a red carpet in the designated space?  Maybe we should pull up a reclining chair and bring in a fireplace!"

   ii. On or about March 9, 2021 after a budget meeting and in response to a query as to how the budget meeting went: "Well, Tom Kingman announced that his wife gave up sex for Lent, then Tom O'Hara immediately said - No she didn't!  How funny is that?!  It was hilarious!"

hhh. On or about June 24, 2021, amid the on-going, hostile work environment, I was compelled to tender my resignation, effective July 9, 2021.

iii. I told Bertrand that I was compelled to quit because of the discriminatory and retaliatory conduct I had been subjected to.

jjj. Bertrand acknowledged some of Respondent's retaliatory conduct, including the inappropriate actions by Respondent during the December 11, 2019 meeting.

B.  1.  Respondents Stated Reasons

   (a)  Respondent never provided a legitimate, non-discriminatory reason for the hostile work environment to which I was subjected.

   (b)  Respondent never provided a legitimate, non-discriminatory reason for its failure to correct my pay or for my termination.

C.  1.  Statutes and Bases for Allegations

I believe that Respondent has discriminated against me because of my sex (female) and retaliated against me for complaining of sex discrimination and harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.*

# EXHIBIT 2

EEOC Form 161-B (01/2022)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:  **Kathleen Kohri**
**REDACTED**
**Mount Laurel, NJ 08054**

From:  **Philadelphia District Office**
**801 Market St, Suite 1000**
**Philadelphia, PA 19107**

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **530-2022-05377** | **Legal,**<br>**Legal Unit** | **(267) 589-9707** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

More than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

***Equal Pay Act (EPA):*** *You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.***

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Digitally Signed By: Karen McDonough
07/12/2022

**Karen McDonough**
**Deputy District Director**

Enclosures(s)

cc:   **Joseph Lentini**
**Wall Township**
jlentini@townshipofwall.com

**Katherine Oeltjen**
**Console Mattiacci Law, LLC**
oeltjen@consolelaw.com